UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **INSIDER, INC.,**<br><br>                          Plaintiff,<br><br>                  v.<br><br>**U.S. GENERAL SERVICES ADMINISTRATION**,<br><br>                          Defendant. | Case No. 1:21-cv-02653 (TNM) |

### MEMORANDUM OPINION

Media company Insider Inc. filed FOIA requests with the General Services Administration seeking its records on President Trump and Vice President Pence's 2020 transition teams. GSA obliged, producing many documents. But it withheld some team members' names under FOIA Exemption 6. Displeased, Insider sued.

Now, both parties move for summary judgment. The Court holds that GSA has satisfied its duty under FOIA to search for and produce all nonexempt information. So the Court will grant summary judgment for GSA and deny Insider's cross motion.

### I.

In 2021, Insider filed three FOIA requests with GSA. Each sought "information related to expenditures from presidential transition accounts maintained by GSA." Def.'s Stat. of Undisp. Mat. Facts (SUMF) ¶ 9, ECF No. 11-2. In response, GSA determined who might have such documents and directed those employees to gather them. Decl. of Travis Lewis ¶ 15, ECF No. 11-3. It then delivered hundreds of pages of records to Insider. *Id.* ¶¶ 18, 20.

As part of that production, GSA created a spreadsheet for each transition team. The sheets detailed each team members' salary and estimated benefits. Ex. A, ECF No. 11-3. And

the sheet for President Trump's team also listed team members' titles. *Id.* Yet GSA redacted some of the team members' names under FOIA Exemption 6, citing the need to protect those individuals' privacy. SUMF ¶¶ 15, 17.

Miffed, Insider sued GSA. *See* Compl., ECF No. 1. Insider claims only that GSA improperly withheld the names under Exemption 6. *See* Joint Status Rep., ECF No. 9. And it asks this Court to order GSA to produce them. Compl. ¶ 38(ii).[1]

Both parties now move for summary judgment. *See* Def.'s MSJ, ECF No. 11; Pl.'s MSJ, ECF No. 12. This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## II.

To win on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In FOIA cases, an agency must prove that it has disclosed any responsive documents it holds "unless the documents [meet an] enumerated exemption." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). And "the agency must articulate, in a focused and concrete way, the harm that would result from disclosure." *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021) (cleaned up).

Courts construe FOIA exemptions narrowly and consider their applicability de novo. *Id.* at 108. Agencies bear the burden of showing that a claimed exemption applies, even if the requester seeks summary judgment too. *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017).

To satisfy Exemption 6, agencies must first show that they withheld information in "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6). If the agency does, it must

---

[1] During litigation, GSA has given Insider four of the nine names it originally withheld, narrowing the case to five unproduced names. SUMF ¶ 18; Def.'s Reply 1–2, ECF No. 14.

then prove that "the disclosure of [those files] would constitute a clearly unwarranted invasion of personal privacy." *Id.*; *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016). Finally, if the requester can show a public interest in disclosure, then the agency must show that the "substantial interest in personal privacy is not outweighed by [that] public interest." *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1232 (D.C. Cir. 2008) (cleaned up).

To carry its burdens, an agency can rely on declarations alone. *See Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). Yet it may do so only if neither record evidence nor evidence of the agency's bad faith contradicts them. *Id.*

### III.

### A.

GSA meets its initial burden of showing that Exemption 6 applies: The names are in "similar files" and their "disclosure . . . would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

*Similar files.* "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). And the D.C. Circuit has held that it "also [exempts] bits of personal information, such as names." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006). Thus, the names on the spreadsheets fit the first requirement. Insider does not dispute this.

*Clearly unwarranted invasion of personal privacy.* Next, GSA must show that disclosure of the names would be "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This requirement "is not very demanding." *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (cleaned up).

GSA carries its burden here, too.  For one, other transition staff have been harassed and threatened.  Lewis Decl. ¶ 36; *Niskanen Ctr.*, 20 F.4th at 791 (noting "a significant privacy interest" in information that "might invite unwarranted intrusions").  Plus, the team members are not public figures.  Def.'s SUMF ¶¶ 24–25; *see James Madison Project v. DOJ*, 436 F. Supp. 3d 195, 205 (D.D.C. 2020) (high-ranking official had "a significant privacy interest," in part, because he was not a public figure).  Nor have they publicly advertised their positions.  Lewis Decl. ¶ 30.

Insider counters that GSA disclosed some names *only* because those team members held high-level positions on the teams.  Thus, GSA must prove that the redacted team members held low-level government positions, positions which typically carry a greater expectation of privacy.  Since it fails to do that, Insider reasons, GSA must disclose those names too.  Pl.'s MSJ at 1–3.

But this is beside the point.  Under FOIA, the team members are neither high nor low-level *government* employees.  *See* Presidential Transition Act of 1963, Public Law 88–277, § 3(a)(2), 78 Stat. 153 (transition team members "shall not be held or considered to be employees of the Federal Government except for purposes of [other specified statutes]."); *cf. Wolfe v. HHS*, 711 F.2d 1077, 1082 (D.C. Cir. 1983) (finding that transition team reports were not agency records under FOIA); *Democracy Forward Found. v. GSA*, 393 F. Supp. 3d 45, 54 (D.D.C. 2019) (same for emails); U.S. Dep't of Justice, FOIA Update, Vol. IX no. 4 (1988) ("[I]t seems quite clear that transition teams are not federal agencies subject to the FOIA.").  Rather, they are private citizens; GSA merely pays them.  Lewis Decl. ¶ 6.  And private citizens, like low-level government employees, have a heightened privacy interest.  *Common Cause v. NRC*, 674 F.2d 921, 938 (D.C. Cir. 1982).

But even if the team members were government employees, GSA would still carry its burden. GSA's decision to withhold the names turned on more than their seniority. It "considered multiple factors" for all team members: whether they were public figures, held high-level positions, or had publicly identified themselves as working for the teams. SUMF ¶¶ 20–23.[2] GSA then asked if "the public's interest in disclosure . . . overc[a]me each individual's privacy interest." *Id.* ¶¶ 24–25.

It also noted that disclosing the names would "not shed light" on GSA's expenditures because the spreadsheets already included the team members' salary and benefits. *Id.* ¶ 26. And GSA determined that disclosure posed a "legitimate" threat to the team members' privacy since transition staff have been harassed in the past. *Id.* ¶¶ 28–29.

More, as part of its analysis, GSA disclosed four more names during this litigation. Lewis Decl. ¶ 24; Def.'s Reply at 1. For example, it disclosed Cassidy Hutchinson's name after she received media coverage. Def.'s Reply at 1. In short, GSA made a careful, nuanced, and individualized determination.

Thus, GSA has shown that the names count as "similar files" and that the transition staff have a significant privacy interest in protecting their names from disclosure.

**B.**

Next, the burden shifts to Insider to show that disclosure is in the public interest. To do that, Insider must prove that disclosing the names would "help the public stay informed about 'what their government is up to.'" *Exec. Off.*, 830 F.3d at 674 (quoting *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)).

---

[2] In conducting this analysis, it looked at more than just the team members' salary. For instance, GSA disclosed one team member, Marc Short, whose relatively low salary belied his high-profile former position. Ex. A, ECF No. 11-3.

Insider's theory is simple: Presidential transitions are important and thus the public has a significant interest in knowing who helps run them. Pl.'s MSJ at 3–4. And as Insider notes, another judge in this district has found that disclosing the names of transition team members serves the public interest. *See Am. Oversight v. GSA*, 311 F. Supp. 3d 327, 348 (D.D.C. 2018).

The Court is unconvinced. Disclosing transition staffs' names, alone, tells the public almost nothing about what *GSA* is up to. GSA does not hire transition teams. Lewis Decl. ¶ 6. Nor does it decide their pay or job duties. And GSA is not the staffs' employer. It merely supports transition teams by paying their staff and helping with their administrative needs. *See* Presidential Transition Act of 1963, Public Law 88–277, § 3(a)(2), 78 Stat. 153; Lewis Decl. ¶¶ 6–7.

What is more, the information request in *American Oversight* was different. And so the public interest analysis is too. The requester in *American Oversight* sought GSA's communications with transition staff, including "calendar entries [and] meeting agendas." 311 F. Supp. 3d at 333–34. Disclosing names in those documents *could* help illuminate GSA's inner workings. Who did GSA invite to meetings? Did it communicate with high-ranking members or low?

But here, GSA has already disclosed practically all responsive information about its involvement with the transition teams: It disclosed how much it paid the team members and how long it expected to pay them for. Lewis Decl., Ex. A. Plus, it disclosed each team members' benefits. *Id.* So Insider got all the information that would help the public know more about *GSA's* "expenditures from [presidential transition] accounts[s]." Compl. ¶ 6.

6

## C.

Even if Insider showed that there is a public interest in disclosure, GSA has proved that the private interest dwarfs it.

Any public interest here is light. In contrast, the privacy interest weighs heavy. There is a real threat that the team members would be threatened or harassed if their names were disclosed. It has happened before. Lewis Decl. ¶ 36. And that worry is heightened here since Insider has published the names of other staff that GSA disclosed to it. *Id.* ¶ 35.

More still, the team members are not public figures, nor have they tried to become famous by publicizing their roles. And unlike in *American Oversight*, these team members are still anonymous. *See* 311 F. Supp. 3d at 346 (finding harassment concerns "overblown" where the transition team had "posted online the [transition team] members' names."). Finally, they are private citizens, not government employees.

Thus, the team members' significant privacy interests outweigh any slight "incremental value" of disclosing five more names. *Exec. Off.*, 830 F.3d at 674 (cleaned up).

## D.

GSA has also satisfied its duty to explain the harm that would flow from disclosure. *Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 110. Insider contacted and then wrote about other team members after GSA disclosed their names. Lewis Decl. ¶ 35. And transition team members have faced threats in the past. *Id.* ¶ 36. Based on these uncontradicted facts, the Court finds that GSA has "articulate[d], in a focused and concrete way, the harm that would result from disclosure, including the basis and likelihood of that harm." *Reps. Comm. for Freedom of the Press*, 567 F. Supp. 3d at 110 (cleaned up). And Insider does not dispute this.

**IV.**

Under FOIA, agencies must provide "[a]ny reasonably segregable portion of a record" after deleting the exempted portions. 5 U.S.C. § 552(b). Though courts presume that agencies have disclosed "reasonably segregable material," agencies still "must provide a detailed justification for its non-segregability." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up).

GSA explains that it redacted only the names on the salary spreadsheet. Def.'s MSJ at 13. After reviewing the redacted spreadsheets, the Court is satisfied that GSA has reasonably segregated the exempt information. And Insider does not contest this either.

**V.**

For these reasons, the Court will grant GSA's Motion for Summary Judgment and deny Insider's Cross-Motion for Summary Judgment. A separate Order will issue.

Dated: October 18, 2022                                    TREVOR N. McFADDEN, U.S.D.J.